Service. Good morning, Mr. Andreazzi. You have two minutes reserved for rebuttal, and you can begin whenever you're ready. Thank you, Your Honor. May it please the Court. For the sake of efficiencies for this oral argument, I thought it best to focus on some of the things that the Commissioner has acknowledged on brief in the appellate proceedings here, because I think those go to the core of the case. First of all, the Commissioner acknowledges now that his revenue procedure 2011-14 does in fact provide instructions directed to designers on how to fill out the Form 3-115 for an automatic application, application for automatic change of accounting method. Yes, but it still has to, it still speaks to a change in accounting method, right? Yes, it does. And even though the designers are mentioned there, I have difficulty understanding how read in context of Section 481, there's a duplication or omission that needed to be adjusted so that your client would have relied on this revenue procedure, even acknowledging some ambiguity. Well, I think, Your Honor, it's more than ambiguity. It's clear on its face. But I can answer that question as well. First of all, the statute and the RevProc both say that the designers becomes the taxpayer, becomes the owner of the property. 179D provides depreciation acceleration. So that acceleration is a, it creates this fiction that the designer owns the property. You can only get it if you have that. So for Section 446 of the code governs the ability to do the change of accounting method. 481 provides for an allocation with regard to any changes that need to be made per year based on that change of accounting method. So there's no duplication. You can have a change of accounting method wherein there is no duplication of income or deductions such that no 481 adjustment is required. That happens a lot. In fact, the Form 3115 actually has a, bear with me, a schedule, I believe, E on it that says in the event that there's no, that there was no treatment of the property, no depreciation of the property, here's what to do. So the code, the regs, 446 and 481, all account for the possibility that the adjustment could be zero. So all 481 does is prevents the chance that there is a permanent mix-up of income. I'm still having trouble finding a threat of duplication or omission such that it would have made it reasonable for you to rely on the 2011-14 revenue procedure because the 481 is going in a different direction. But why don't you go ahead with your argument and make this become clear. And I think the thing is, and as a matter of fact, Your Honor, the taxpayer, Cannon, was using amended returns to, the statute was enacted, it came into effect in 2006. There were, the Commissioner was charged with writing regs, never wrote regs. And what was happening was there were notices, a 2008 notice, another notice that came out, and then the RevCroc. So in 2010, the Cannon Corp. did an amended return the way they thought it should be, right, and claimed the deduction, okay, and claimed it on that return. They were getting ready to do that in 2000, for the 2007 year, in 2011, before the three-year statute would kick in, when this notice was issued. And they scratched their heads as well. I wanted you to focus on the duty of consistency as a possible equitable remedy that you might have. And let me see if I understand the argument. Can you tell me what the support would be? That they issued the 2011-14 guidance. They have this language about designers. This whole guidance only applies to automatic accounting changes under 3.115, right? The whole guidance applies to that. So because they put in this language about designers, your client believed that they would be instructed to file it that way, right? Correct. The tax court concluded in a footnote that at the very least, it was ambiguous such that someone reading that could reasonably, in good faith, believe that that's exactly what was happening, right? Yes. And you believe that, in fact, the IRS may have been allowing designers, even though they now say that that was an inaccurate reading, and they clarified that, that they may have allowed designers who did it that way to take the deduction. Is that your belief? Yes. Yes, Your Honor. In fact, they gave us in discovery, again, this is on summary judgment. We're here on summary judgment. Twenty-two thousand pages of documents, all redacted, pretty much. There were some sporadic items where we could see what was going on. One of them was an e-mail from the chief counsel lawyer whose branch wrote the RevProc. And he wrote in there, they were talking about other things, but he said, we've been, we are contemporaneously processing automatic accounting method changes for designers. They got flagged. According to this e-mail, they got flagged and they were being I'm not sure I understand what a controlled case is. IRS stuff from my years there. What they do is the RevProc gives you a code, 152. It's in the RevProc and it's on the form for the 3-1-1-5. And you write that code down, a number on your 3-1-1-5, and it says this is what we're relying on to do the change of accounting method. What he says in the e-mail was, we're doing the 152s, that code, for the ones submitted by designers. And what we're going to do is we're going to process those. Don't open a file on them, he says. Don't open a file on them. We're just going to process them. No need to open a file because they're automatic changes for efficiencies purposes. So that clearly indicates that they were doing that. Do we know anything about whether those other designers were similarly situated in terms of having become owners under the change procedure? I mean, I was concerned about the Commissioner's potentially inconsistent application of the change in method of accounting, but it was difficult to tell from the record whether some other designers that might have been permitted to take this new position were in fact similarly situated to your client. Can you weigh that concern? Yes. In that respect, all designers are similarly situated to Canon. In other words, what happens is the legislation, the statute, was implemented in order to incentivize. What was happening is people, they wanted people to do this energy-efficient property work. But not-for-profits, government schools, et cetera, weren't doing it because there wasn't any incentive. So the purpose was to allow the owner to transfer it. And no matter who the designer was, they weren't the taxpayer. They would just get that to effectively lower their fee. But was it tied also to the year that a property was put into service, though, in all cases? Yeah. But a 3115 is always that. In other words, any deduction under the Internal Revenue Act of 1962 in the year paid or incurred or under, let's say, as an appreciation or anything else in the year the property is placed in service has a date when you claim the deduction. Okay? On a change of accounting method, all of those can be changed if you're saying we want to change it or it's incorrect or something else. It sort of begs that question. There's always a year when you take the deduction. And so the Commissioner, I think, has acknowledged that now, where at first he was saying that only designers got caught in this. On brief, the Commissioner is now saying, well, you know what, even the property owner can't have it. And we said, what? How could that be? He bases it on, and this is crucial to the point, he's saying now only if you depreciate the property to begin with can you ever do a change of accounting method to accelerate it under 179D or 179. That is not the case. If that were the case, no property owner could get this either. Well, I thought the point was when it comes to a designer, there's no change, that there's only one way to do it if you're a designer. You're never going to change the method. There's only one method you can use so that you're not changing. I see what you're saying. Yes. Well, I don't know if that's what Judge Parney was saying, but that's what I'm asking. No, that's, you know what, I missed that point. Here's the key, the answer to that question. If you don't treat the, it's kind of like the rush song. If you don't treat the item on your, the rush song, if you don't treat the item on your return, right, if you say I'm not taking it, that's a choice that you make. That's a treatment. That's a treatment on the return subject to schedules M-1. So, for example, if somebody pays an expense and doesn't take it on their return, okay, there's an M-1 adjustment for it where they would account for that so that it wasn't like it was out there without a choice. I'm not sure I understand, although I did get the rush reference. So I appreciate it. I'm going to ask my clerk about that later. But I did have a separate question. It was the one I was planning to ask, is about the, going back to the duty of consistency question that Judge Bianco was asking. I was a little, well, here's my question. I had thought when I read the facts section of your brief that you were going to make a duty of consistency argument that said I, or your taxpayer, your client, has not been treated like other designers. Everybody else was allowed, or lots of these people were allowed to just kind of go blithely through the system. They got, they were allowed to make this change. And somehow somebody changed their mind and we were the ones who were caught up in this change of administrative management of it, right? We were the first ones caught, and it's not really fair. But when I read your section of the blue brief about your duty of consistency, it seemed like you were not arguing that the commissioner was inconsistently treating your taxpayer as opposed to other taxpayers so much as they were not consistently treating this taxpayer, that they issued a revenue procedure, they told us to do one thing, then they pulled the rug out from under us and told us to do a different thing. So there's two different kinds of consistency, I guess, you could conceptualize. One is the internal consistency of how the commissioner has treated me, right? They treat me one way, then they treat me another way. That's not fair. There's another form of inconsistency. You can say, well, no, you guys have treated me one way, but other taxpayers another. And when I look at your blue brief, and I'm looking in particular at pages 48 through 51, it seems that you're only complaining about what I've described as the internal consistency, that you have flip-flopped on me. And if I'm missing that, can you tell me where in those pages you're arguing that other taxpayers were treated differently? Because I'm not seeing that in the – or just help me out if I'm missing it. Absolutely. We are saying both. We are saying both. So where did you say that blue brief is my question? Where we say it, and I don't have it in front of me right now, but the point is this. We are saying that I'm always – we were mindful of the fact that we can't argue, I want to see how the government treated all the other taxpayers under this code section. To make sure they're treating us the same. You're saying that you can't make that argument? Well, in any other case. But here, it's different. Here, what we're saying is the rule says designers do this, file a 3115. So what we're saying is we now know that the commissioner is allowing those people to file the 3115s. So we're being treated differently. But how does that not just collapse back on your initial argument that you were always allowed to do that? Because if it turns out that's not what the commissioner was telling you. Let's say we were to agree. No, no, that's not what the commissioner was telling you. I know it could – it's confusing. It seems superfluous. Who knows why they added this little line into this very long revenue procedure. But that's not what they were telling you. Doesn't that collapse into the same argument you're making here about consistency? Because if that's what they were always saying, then they haven't really been inconsistent with respect to your client or anybody. Whether they were mistaken and whether they were asleep at the switch and letting everybody else take this deduction unthinkingly. And then they changed their mind. Oh, boy. What have we been doing? Well, you know what? From now forward, let's close the floodgates. But everybody who's already water over the dam, too late. We're not going to go back and get them. That argument I would understand. But that's not the argument I see in your blue brief. Well, it actually is. In other words, what we're saying is the instruction told designers that they can do this. And the way they treated designers in implementing this rev proc is consistent with that. The only people, the only taxpayer that wasn't – I thought the duty consistency argument was different. Even if that's not what the commissioner meant and said, the fact that other people misunderstood it and were given a green light means that now they've got to give us a green light, too. But that's a different argument from saying that's what the commissioner was saying to begin with. You know what I mean? Yes. I just – You're trying to say something different. No, I think we're saying the same thing. My only comment to that is where if the rule was really different from what I'm telling you, right, and they were – it's like the speed limit on the highway is 55 miles an hour. If the police are letting people go at 65 miles an hour and they only pick me to give me a ticket, I really don't have a gripe about that. Okay? But here – It's like a selective enforcement. Right. Here – I'm not saying selective enforcement. What I'm saying is this reinforces the fact that the instruction says what it says. And the government now agrees with that. Before, they were just saying, we don't know what you're talking about. And so now, finally, they're seeing it. So you also – you also have another piece of information that you haven't mentioned, piece of evidence, I guess, where you say a revenue agent reached out to the company and said, we will allow you to do it this way if you just get rid of your protective return. That's what happened. So that actually suggests that they were inconsistent with respect to you. With us. Absolutely. Absolutely. That was – and just to make sure that that's – that point is clear, what happened was the revenue agent was on the case for the other years, 08, 09, 10, et cetera, because the Cannon Corporation is part of a coordinated exam cycle. So the agent had that. When he got our 2011 return, Cannon's 11 return with the 3115, he came back and said, and then we immediately protectively filed to make sure that they didn't lose 08, 09, and 10 because of the 2012 rough proc that came in right under the gun. They did that, protected themselves. This agent came in and said, look, if you rescind your protective returns, I'll allow the whole 3.09 or 3.9 million – $3.1 million you're claiming on the 3115 for 11. We said, okay, went back to the corporation, talked about it, and we said, all we need is a 906 closing agreement or something saying memorializing this. They wouldn't do it. They wouldn't do it. They wouldn't do it. Let's let them respond to that. Thank you. Okay. Mr. Rosenberg. Counsel, I'm sure you'll get there in whatever point, but if you wouldn't mind responding to that last point we were just discussing. About Agent Gunther, there's a very easy response to that, which is there's no record evidence to support the assertions in the brief. The assertions in the brief about that alleged interchange come directly from the taxpayers' petition or the taxpayers' amended petition on summary judgment under Tax Court Rule 121D. You can't rely on allegations in a petition or amended petition as evidence, and so that's why the tax court never even engaged in – No, that's not why. The tax court, on the duty of consistency, gave one reason for rejecting the duty of consistency, one, which was the language is plain. That's the only reason the tax court gave for rejecting that claim. It didn't say, you know, I can't consider that. The tax court said it's plain, so there's no consistency problem. I could read it to you, but that was the only reason given. That was the overarching reason given for rejecting the equitable claims. Right. So that's the only reason, and we know – I don't know how the tax court said that because there's a footnote that says a reasonable – that I understand how someone could reasonably, in good faith, believe that it said something else. So I'm having a hard time understanding how it's so plain there's no equitable claim, and the court also concluded that someone could reasonably, in good faith, believe that it said something else. Well, footnote 6 in the tax court's decision says, particularly with respect to filing a current year claim, which means if, in Cannon's case, in 2007, assuming the revenue procedure applied to that year, they filed a Form 3115 to claim the deduction by relying on the revenue procedure's instruction. The tax court said, I would understand if a taxpayer, in good faith, did that, even though that form is for changes in accounting method, which the taxpayer doesn't have. But Cannon, in this case, did actually the exact opposite of that. On their 2011 return, which is the current year that their Form 3115 is being concerned, they only tried to claim a method of accounting change for prior years' deductions, and they claimed their 2011 itemized deductions directly on their 2011 return. Let me ask you – I want to go back to Judge Narghini's question and putting aside whether it was properly framed in the blue brief or not. I want you to tell me whether or not this is a duty of consistency claim that might survive summary judgment. If, in fact, there was ambiguity in this rule, where designers could reasonably believe that this was the form they should use, and if the IRS was letting at least some designers file it that way and was giving them the deduction, but for whatever reason, decided for Cannon, we're not going to do that. Is that a duty of consistency claim? The duty of consistency focuses strictly on the commissioner and the individual taxpayer and the treatment of a single taxpayer, and not the treatment of one taxpayer in relation to another taxpayer. If that were true, then any time the IRS erroneously allowed a deduction to one taxpayer – Well, let me read you – there's a case, Servo. It wasn't cited in the brief. Servo Holdings. This is one of our cases from 1973 that says the commissioner has a duty of consistency towards similarly situated taxpayers. For example, he cannot properly concede a capital gains treatment in one case and then, without adequate explanation, dispute it in another, having seemingly identical facts, which is pending at the same time. That's a quote in a tax case about the duty of consistency. Isn't that a potential claim here, that some designers are filing this form and they're getting it, and some designers are filing this form and they're not? What is alleged and what is supported by the record in this case is that other designers filed claims on Forms 3115 for the automatic consent to change accounting methods. There's no evidence that other designers were allowed the deductions under the wrong methodology. Let me say that again. You're saying that there's evidence they filed the form, but there's no evidence that they got the deduction? Correct. Why would they be filing the form unless they were trying to get the deduction? Because I thought the premise is, for a designer, there's only one moment in time when you can take the deduction. It's got to be accelerated. It's got to be the year the building is put in service. By definition, the government's view is that no designer can ever change an accounting method. What would these designers be filing it for? Let me step back and try to explain what this form does. By default, if you have an accounting method and you want to change it in a way that reflects on your next return, you have to get permission in advance from the commissioner to do that. Sometimes, in certain circumstances, the IRS will give you consent to make the change in advance so that you just file the form with the automatic consent number on it with the return so that you don't have to ask before you file the return to make a return out using a new methodology. That methodology still has to be a change in accounting method, and if it turns out not to be, and you've claimed a deduction in a way or made a change that is not consistent with a change in accounting method, your modifications are going to be reversed and you're not going to get the treatment that you claimed on your return. The Form 3115 is basically asking or triggering the consent to file a new return with a new methodology, but it's always conditional. It is not permission to change accounting methods. We're not focused. We understand that's the interpretation, but the question is whether or not they were applying that inconsistently. What's your response to that e-mail? I've read that e-mail a number of times. I don't completely understand it, but it does at least, we're at summary judgment. Every reasonable inference is drawing their favor, and it seems that there's at least some indication in that e-mail that they're letting people who are designers who are filing these forms get the deduction. What that e-mail shows is that other designers were filing these Forms 3115 rather than just going and being coded in the system. They were being controlled and reviewed and sent back to this pass-through section of the IRS, and the person says, why are we getting these? We're not supposed to be reviewing and controlling them. They're just supposed to be processed. These are not the examiners. These are not the people who are going to review the returns. Does that e-mail suggest that they're saying, stop flagging me, just let them go through, or am I misunderstanding that? That they, yes, that they're not, that the forms for consent are not supposed to be going back to the Office of Chief Counsel that's responsible for the deduction, but it doesn't mean that the examiners aren't going to look at it and determine whether there's actual accounting method change, whether the deductions are properly claimed. That e-mail only shows that there were other designers who had filed this form, like Cannon did, and that's also borne out in the 2012 Revenue Procedure that clarified and modified the Revenue Procedure before. There's no dispute that there were other designers. And remind me of what happened with Cannon. Was their 3115 rejected, or was it just their tax returns afterwards that were rejected, the deductions on it, or was it both? With their 2011 return, they claimed their deductions for 2011 as current year deductions, like a regular automized deduction. For past years, rather than amend the returns for those prior years, they put them on a form 3115 and then claimed them as 481A adjustments. So when the IRS processed the return, it said you have improperly claimed your deductions for 2007 through 2010, your 2011 claims, which were itemized on the return. I understand the substance of it. I'm trying to figure out what got approved and what not. I know this is seeming hyper-technical, but did the government reject 3115? My question is, if the e-mail shows that the 3115s were going forward in these other cases, but it's a two-step. First you let the 3115 come forward, who cares, and then you look at the substance of the tax return, that's fine. But my question is, with this taxpayer, you also rejected the 3115. Right, I understand. But if you had said, no, no, no, we let the 3115 go through, who cares, and then later we just looked at the substance, and you don't know whether we looked at the substance through the taxpayers, I get that argument that there's no showing or even suggestion of inconsistent treatment as between or among these taxpayers. But what happened with Cannon and the 3115? So the 3115 was part of the return, and it was processed. The court looks at the notice of deficiency. Processed meaning approved? Processed meaning it was considered as part of the return, and then in the notice of disallowance, the IRS says you improperly claimed a deduction on this form, which was a part of your return. And so it is disallowed because you improperly claimed the deduction. It's not like the form was rejected and separated. So what does your e-mail show about other taxpayers and their 3115? All it shows is that other taxpayers submitted forms 3115, like Cannon did. That's all that it shows. Well, you're telling us that, but, again, we have to draw a reasonable inference in their favor. Nobody has testified to what that e-mail means or what was going on at the IRS, what the IRS really believed. Why isn't that a problem, a summary judgment? You cite these cases in your brief on this issue that you say you acknowledge that duty of consistency is less demanding than equitable estoppel, that you don't need a misrepresentation. And then you cite the Tenth Circuit case that says for this duty that there has to be unfair conduct on the part of the Commissioner with some degree of reliance thereon by the taxpayer to the latter's detriment. That's the standard that you cite to us. I give you also another case of our own that suggests if similarly situated people are all being treated differently, that that's unfair under the duty of inconsistency. So why isn't there at least enough to let them explore this more in the tax court? I have two responses to that. I see that I'm beyond my time. No, go ahead. I asked the question. I have to give you the time to answer it. So the first response is that there were cross motions for summary judgment. So both sides are saying there are no genuine issues of material fact in dispute. Cannon said the record was clear that there were other taxpayers who got this deduction and Cannon was denied it by claiming it the wrong way. There is no record evidence of that. So both sides said there was no genuine dispute. It's just that Cannon doesn't actually cite any record evidence to support their gloss of it. They also got denied some discovery that they wanted to tip, right? They made some motion to compel some discovery that they didn't get. Right, because that discovery would not have yielded any relevance. Because the tax court believed that it was plain. Well, yes. Because there wasn't something unfair that was going on. And so this is the second point, which I think is ultimately probably the biggest point, is what did the revenue procedure actually say? Now, this revenue procedure set out a process by which a taxpayer who had a change of accounting method could get automatic consent to file a return that reflected a new method of accounting. Okay? So the entire premise of this revenue procedure, of this procedure, was that any— Are designers ever—is that ever useful to a designer based on your concept of designers? Designers were mentioned there, but I think your position now is like designers really aren't entitled to use this at all. That's right. So why was there a whole sentence in there about designers in a rule that designers couldn't use? Okay. The guidance is supposed to be helpful, and it didn't rule out some perhaps unthinkable possibility that a designer might have a change in accounting method for some other reason that might be able to file this paperwork or might want to file this paperwork with this change of accounting method form. But the revenue procedure is not saying that a designer has a change in accounting method when they claim this deduction. It is not saying that a designer is entitled to change of accounting method relief if they don't actually have a change in accounting method. I think it's at least ambiguous. I understand what you're saying, but you're telling us that it's not ambiguous, that when you put language in there about a designer, they're not supposed to read it as saying, this is the way you're supposed to do it. They're supposed to read it as there could be some conceivable other change in accounting you can have. None of that is said in the rule. Well, I point the court's— That's why it was clarified, right? I point the court's attention to page 414 of the Joint Appendix. This is a contemporaneous email between Cannon's accountants who are saying that they don't see that when a designer takes a 179D deduction that they're changing accounting methods. Now— Can I just ask you to go back to the thing I asked in the very beginning and putting aside whether it's—you can't consider it because it's only in the petition. If someone from the IRS told them, just take away that protective return and we'll let you do it this way and put it through, is that a problem under the duty of consistency or not? I don't see how those connect to whether they got appropriately—they actually got appropriate treatment. There's no record evidence that Cannon actually withdrew anything. In fact, they didn't. Because they wouldn't put it in—they said the person wouldn't put it in writing. They were going to do it, and then they said, can you put that in writing for us? And they were told no. But that's a pretty—if that conversation happened, that's a pretty troubling conversation, isn't it? It sounds troubling, but again, I'm not sure that that happened. Well, no. I think the premise of the question is assume it happened. Let's just assume, counterfactually in your view, it happened. Assume it's in the record. Then what? Again, I don't understand. I guess I'm not seeing how that relates to the duty of consistency and how it affects the treatment of this taxpayer and another taxpayer. Is that because a revenue agent's proposal is not binding on the commissioner? Well, until it's accepted— If the commissioner said do X and then later says do Y with respect to a single taxpayer, then you have this line of internal inconsistency with respect to the taxpayer, right? Yes, when you have an actual treatment and the treatment changes. Right. And I think that's— When they couldn't get it in writing, they stuck with what they had done, and now they can't get it because it's beyond the statute of limitations, right? Again, I see I'm over my time. If I may make one more point, which I'm hoping will help clarify some of this.  We're only really talking right now in this case about the 2007 tax year. The other tax years, Canon has already gotten the deduction allowed or has basically got—the IRS has approved the allowance of the deduction, and the relief is in suspense pending whatever happens with a tax court decision to make sure there's no duplication of tax treatment that then has to be fixed later. So the only tax year in question is 2007. So what does that mean? The 2007 tax year has a statute of limitations problem. It's time barred. The law says that a refund claim, which is what the deduction for 2007 ultimately amounts to, has to be filed within three years of when the return is filed. Right. It cannot be told. That deadline cannot be told. Canon is asking the court to grant it equitable relief to avoid the rigors of multiple statutes, including the method of accounting statute and Section 481 and Section 179D, to grant it relief which is time barred beyond repair by the statute of limitations. The whole purpose of this equitable relief is they're saying we're time barred now because of all this confusion and inconsistency at the IRS with respect to how we're trying to do it in the time frame. And now we can't because they went back and forth on how to do it to our detriment. That's the whole point of equitable relief, isn't it? The fact that it's now time barred doesn't stop us from saying if we think that's what happened, that they should get some relief. How much money is at stake for this year? I'm not sure what their tax rate is. The deduction's face value is $2.3 million, give or take, so apply the tax rate. I'm sorry, again, I'm much over my time. Two more evidentiary points which, again, go to Judge Bianco's questions. With respect to reliance and an inference of reliance on the revenue procedure, a couple of things. There's no record evidence, no declaration, no document, that shows that Cannon decided to hold its amended return for 2007 based on the revenue procedure. It's a very simple thing. You put in a record on summary judgment. You get someone from the company. What's the second point? The second point is that they still had eight months from when they could have filed, when the revenue procedure came out and when their deadline to amend their 2007 return came, to make a change, to ask for a private letter ruling or get reliable and binding clarification, and they didn't do that. And that costs money, though, right? It does. Because they called the IRS. They even called the person's name who was on the revenue procedure, and she said figure it out for yourself, right? She said to use your best professional judgment because she wasn't going to give them tax advice about which form to file. Right, because you can get a revenue ruling, but you've got to pay a lot of money for it, right? That's right, but here the refund was significant. All right. Thank you. Thank you. Mr. Andriosky? Can you just address the point about that there's nothing in the record about reliance? Can you just address that? Yes. I will say this. The accountants called Jennifer Bernadine, whose name is on the refund. That's what I was just talking about. Yeah. But she said figure it out, so that's not reliance. Well, no. She was telling them what to do. What they said was, here's the key thing. They were filing amended returns. They did it for 06. They were prepared to do it for 07. When they got notice 2011-14, they said, they called up and said, hey, does this mean we can't file another amended return for this year? Can we still file an amended return, okay, if what the government is saying is correct? What did she say? No reasonable person could. What did she say? She said, she didn't say. What did she say? She said, use your professional judgment. And what she could have said was, she could have said, this REF PROC does not deal with designers. But you're just saying she could have said something they could have relied on. But if she said, I ain't answering, then you can't say, well, I'm going to rely on her refusal to give us an answer. That's not something to rely on. Right. So they had nothing from her to rely on. Right. They had nothing. And all they could do is look at the REF PROC, and it's saying designers filed a 31-15. And to this point about the issue of allowing other designers to file the form. I'm sorry, but what was it that precluded them from continuing to do what they had already done? By the time 2012-39 came out, 07 was time barred. Right, right. At the time they got a non-committal answer, a non-clarifying answer from the person to whom they were directed at service. There was nothing that prevented them from doing just what they had done earlier, right? I mean, this was an alternative way to get the automatic approval. They would have been doing it contrary to the express provisions of the REF PROC. Why couldn't – no, but why hadn't they done it earlier? Earlier than – Yeah, why did they wait so long? Oh, these studies, the calculations for the deduction, take time. So, for example, the guidance was coming out. You have to – I'm sorry. You have to compile all this information. And so that's why for 2006 they got it in in 2010. Remember, the regs or the guidance came out in 08, and they were still giving guidance on what was supposed to be in this. So they were always – these designers and even the owners were behind in getting the information. Can I ask you, going back to one of Judge Bianco's questions, he brought up the case that – it's from our court, right, Servo, which talks about the duty of consistency as among different taxpayers. I didn't see that case in your brief. Is that correct? Or any argument about that line of cases? I don't – yes. I would love to address that if we can. Well, I guess my question is not whether you can address it now. My question is did you address it in the briefs? Because it sounds to me like it's coming up for the first time in oral argument, this idea of inconsistency as among taxpayers. There may very well be a case where we've said that there is such a doctrine that one could argue it. But, again, the only thing I saw in your briefs was the duty of consistency of the commissioner with respect to your taxpayer, the single taxpayer. Did they over time change the way they treated this taxpayer? I didn't see an argument based on Servo in your blue brief. Is it in your blue brief? No, we did not cite that case. Well, I'm not asking just the citation of that case, but did you make any argument? And if you can just point me to a page where you made the argument in your blue brief, that is my specific question. I – it's – I know it is. And you don't want to go in here, right, because generally arguments not made in the opening brief are deemed forfeited. That's how we operate in civil and criminal cases, you name it. So I'm asking where in the blue brief you set it. I don't know if I have a specific page now, but the point is this. The point is we've been – I'm not asking where the point is that you could make an argument. I'm asking did you make it in the blue brief? That's my only argument. Canon has been treated disparately from other – Yeah. Where in the blue brief did you say is my only question? We've said it. I can give you – I don't give – I can't give you the page right now where we've said it. But I know we've said it in our – Well, we can read your blue brief afterwards. In our – in our response to the government's – No, I'm looking – my limited question was the blue – that's fine. We can read it later. All right. Thank you. Thank you both for a resorted decision. Have a good day.